605 P.2d 227

**CITY OF ALBUQUERQUE, a Municipal Corporation, and Manzano Transportation Co., a New Mexico Corporation, Plaintiffs-Appellees,**

v.

**NEW MEXICO STATE CORPORATION COMMISSION, Defendant-Appellant,**

and

**Yellow Checker Cab Company and Albuquerque Cab Company, Intervenors-Appellants.**

No. 12305.

Supreme Court of New Mexico.

Nov. 29, 1979.

Rehearing Denied Jan. 30, 1980.

Jeff Bingaman, Atty. Gen., W. Royer, Asst. Atty. Gen., Santa Fe, for defendant-appellant.

David L. Norvell, Toulouse, Krehbiel & Delayo, James R. Toulouse, Albuquerque, for intervenors-appellants.

Cornelius J. Finnen, Charles E. Barnhart, Albuquerque, for plaintiffs-appellees.

## OPINION

FELTER, Justice.

Plaintiff-Appellee, City of Albuquerque (hereinafter "the City"), contracted with Manzano Transportation Company (hereinafter "Manzano"), as subcontractor for the City, for transportation of passengers to and from the Albuquerque International Airport. Defendant-Appellant, State Corporation Commission (hereinafter "the Commission"), ordered the City to refrain from putting into operation limousine or other motor carrier service as described in the contract with Manzano because no certificate of public convenience and necessity had been obtained from the Commission authorizing such activity. The City filed an original prohibition action in the District Court of Santa Fe County against the Commission alleging that it was without juris-

diction to require the City to refrain from carrying out its contract with Manzano. The District Court of Santa Fe County vacated the order of the Commission and restrained it from interfering with the City and Manzano in establishing the limousine service.

The Commission and Intervenor-Appellants, Yellow Checker Cab Company and Albuquerque Cab Company, appeal from the judgment of the district court, claiming that the Commission has sole jurisdiction on all matters of public convenience and necessity respecting carriers for hire within the State of New Mexico. We affirm the judgment of the district court.

The first issue involves the applicability of the following two constitutional provisions which in pertinent part read as follows:

N.M.Const. Art. XI, § 7:

The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating and controlling all charges and rates of * * * common carriers within the state and of determining any matters of public convenience and necessity relating to such facilities * * *.

N.M.Const., Art. X, § 6:

D. A municipality which adopts a charter may exercise all legislative powers and perform all functions not expressly denied by general law or charter. * *

E. The purpose of this section is to provide for maximum local self-government. A liberal construction shall be given to the powers of municipalities.

The Commission argues that Section 7, Art. XI specifically vests control of common carriers in the Commission, whereas Section 6, Art. X deals with common carriers generally by implication. The City responds that Section 6 treats with specificity the authority of a Home Rule Municipality, and that Section 7 covers such authority only in its general application.

■ The two constitutional provisions are *pari materia*, and lead to conflicting results

in this case. Where, as here, provisions cannot be harmonized, the specific section governs over the general regardless of priority of enactment. *New Mexico Bureau of Rev. v. Western Elec. Co.*, 89 N.M. 468, 553 P.2d 1275 (1976); *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936); *Saiz v. City of Albuquerque*, 82 N.M. 746, 487 P.2d 174 (Ct.App.1971) (overruled on other grounds at *Galvan v. City of Albuquerque*, 87 N.M. 235, 237, 531 P.2d 1208 (1975)). *See also Santa Fe Downs, Inc. v. Bureau of Revenue*, 85 N.M. 115, 509 P.2d 882 (Ct.App. 1973).

■ The problem in applying the above rule to the question at bar is that one section is not readily identifiable as the more specific one of the two. This presents a case of first impression in New Mexico. In such instance, here in particular, we hold that the latter provision governs "as the latest expression of the sovereign will of the people, and as an implied modification pro tanto of the original provision of the Constitution in conflict therewith." *Asplund v. Alarid, Assessor of Santa Fe Co., et al.*, 29 N.M. 129, 135, 219 P. 786, 788 (1923). Therefore, Section 6 controls because it was adopted by amendment on November 3, 1970, whereas Section 7 was originally adopted on January 21, 1911, and amended on November 3, 1964. We note that this decision also incorporates the mandate in Section 6 that "[a] liberal construction shall be given to the powers of municipalities."

■ Further, we hold that the proposed limousine service is a proprietary rather than a governmental function and therefore within the Home Rule authority of the City. This Court reasoned in *Apodaca v. Wilson*, 86 N.M. 516, 525 P.2d 876 (1974) that the term "general law", as used in the Home Rule Amendment, means a law that applies generally throughout the state, or is of statewide concern, as contrasted to a "local" or "municipal" law. The Home Rule Amendment applied in that case to service charges for municipally owned sewer and water facilities and the use of funds received therefrom. Such matters are of

local concern. In the instant case, transportation of passengers between points and places within the City is not of any more statewide concern than the operation of the municipally owned sewer and water facilities of Albuquerque. Both activities are locally limited.

In McQuillan, Municipal Corporations (2d Ed.) § 93, it is said: "The purpose (referring to the home rule amendments) was to give local communities full power in matters of local concern, that is, in those matters which peculiarly affected the inhabitants of the locality, not in common with the inhabitants of the whole state."

86 N.M. at 522, 525 P.2d at 882.

■ A test that may be applied to determine whether an activity is of general concern or merely of local or municipal concern is whether it is proprietary or governmental in character. See City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 8, 164 P.2d 598, 602 (1945) (cited with approval in Apodaca), where it is stated that:

Some * * * activities are so noticeably local or state-wide that they are easily assignable, while in others the line of demarcation is very difficult of discernment, because the activity may be neither predominantly local nor state-wide but may partake of both. Whether it is one or the other in such case depends upon whether the activity is carried on by the municipality as an agent of the state. If it is, it is of general public concern. If it is exercised by the city in its proprietary capacity, it is a power incidental to home rule. (Citation omitted.)

In Southern Union Gas Company v. City of Artesia, 81 N.M. 654, 472 P.2d 368 (1970), this Court held, inter alia, that the operation of a water and sewer system was a proprietary function of the defendant city, not a governmental function. Operation of a transportation facility by a municipality should likewise be categorized as a proprietary function, not a governmental function.

2 E. McQuillan, Municipal Corporations § 10.05, 744 (3d rev. ed. 1979) states that:

In the exercise of governmental functions and powers municipal corporations execute the functions and possess the attributes of sovereignty by reason of authority delegated by the legislative department of government.

Private, municipal, proprietary functions and powers are those relating to accomplishment of private corporate purposes in which the public is only indirectly concerned, and as to which the municipal corporation is regarded as a legal individual. Private functions are those granted for the specific benefit and advantage of the urban community embraced within the corporate boundaries. All functions of a municipal corporation not governmental have been said to be private.

The distinction between governmental and proprietary, and private or municipal functions is set out in Britt v. City of Wilmington, 236 N.C. 446, 451, 73 S.E.2d 289, 293 (1952), as follows:

So then, generally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and "private" when any corporation, individual, or group of individuals could do the same thing. Since, in either event, the undertaking must be for a public purpose, any proprietary enterprise must, of necessity, at least incidentally promote or protect the general health, safety, security, or general welfare of the residents of the municipality. (Citation omitted.)

Certainly no one would seriously contend that a limousine service possesses any of the attributes of sovereignty or that it is an undertaking in which only a governmental agency could engage. Such activity does fit within the criteria set out in McQuillan, supra, and in the Britt case defining proprietary functions.

■ It is argued by the Commission that the trial court erroneously admitted and considered evidence which was not presented or admitted in the hearing before the Commission. Numerous decisions of this

Court, including *Transcontinental Bus System v. State Corp. Commission*, 56 N.M. 158, 241 P.2d 829 (1952), are cited for the proposition that upon an appeal from an order of the Commission, additional evidence may not be considered, and the court is without authority to try the case anew upon the record. We agree with this well entrenched principle of law. Moreover, we are not persuaded by *Harris v. State Corporation*, 46 N.M. 352, 129 P.2d 323 (1942), cited by the City for the proposition that there are exceptions to that rule. The language relied upon in *Harris* is obiter dictum—that questions of constitutional right and power may be exceptions to the general rule in *Transcontinental*.

None of the authorities cited by the Commission has applicability to the case at bar. No application for a certificate of public convenience and necessity was made to and denied by the Commission in this case. Rather, the City was cited by the Commission to cease and desist from implementing and effectuating a contract for limousine service. No appeal was taken from any order of the Commission. Rather, the City filed in district court an original prohibition action against the Commission alleging that at all times it was without jurisdiction to prevent the City from its participation in the contract for limousine service, and was without jurisdiction to require its licensing of or regulation of such municipal activity.

Appeals from orders of administrative agencies are brought under and are subject to the requirements of the Administrative Procedures Act, §§ 12–8–1 to 12–8–25, N.M.S.A.1978. Section 12–8–21 specifically provides that in cases of appeal from an administrative agency decision:

[T]he review shall be confined to the record, except that, in cases of alleged irregularities in the procedure before the agency not shown in the record, testimony thereon may be taken if the review is in the district court.

In this case, no action to review the decision of the Commission was brought under the Administrative Procedures Act. The action brought by the City was an original prohibition action brought under the authority of Section 65–2–66(A), N.M.S.A. 1978, which provides in part, that:

Any motor carrier and any other person in interest being dissatisfied with any order or determination of the commission, not removable to the supreme court of the state of New Mexico under the provisions of Section 7, Article XI of the constitution of the State of New Mexico, *may commence an action in the district court for Santa Fe County against the commission as defendant, to vacate and set aside such order or determination*, on the ground that it is unlawful, or unreasonable. In any such proceeding the court may grant relief by injunction, mandamus or other extraordinary remedy. (Emphasis added.)

The Administrative Procedures Act does not prohibit the receipt and consideration of otherwise admissible evidence by a court of general jurisdiction in the exercise of its original jurisdiction over an extraordinary remedy such as prohibition. If it were otherwise, the exercise of unlawful jurisdiction by an administrative agency would go without effective challenge. No authority need be cited for the proposition that a court of general jurisdiction may receive and consider *all* admissible evidence while hearing and deciding cases invoking its original jurisdiction.

The final point raised on appeal by the Commission is that the district court erred in concluding that the City was exercising a right to contract for its special transportation needs pursuant to the Municipal Transit Law, §§ 3–52–1, *et seq.*, N.M.S.A.1978. Section 3–52–4(A) reads in pertinent part as follows:

A. Any eligible municipal corporation having elected to invoke the powers set forth in the Municipal Transit Law [3–52–1 to 3–52–13, NMSA 1978] may engage in the business of transportation of passengers and property within the municipality by whatever means it may decide, and may acquire cars, motor buses and other equipment necessary for carrying on the business. * * * It may do

all things necessary for the acquisition and conduct of the business of transportation.

The Commission urges that the Motor Carrier Act, §§ 65–2–1, *et seq.*, N.M.S.A. 1978, controls instead, and that it mandates the City to require a certificate of public convenience and necessity from the Commission before contracting for limousine service—this because the Municipal Transit Law does not authorize the City to operate within the exemptions of the Motor Carrier Act.

Section 65–2–1(B), N.M.S.A.1978, in pertinent part reads:

It is hereby declared to be the purpose and policy of the legislature in enacting this law to confer upon the [Corporation] commission the power and authority to make it its duty to supervise and regulate the transportation of persons and property by motor vehicle for hire upon or over the public highways of this state in all matters whether specifically mentioned herein or not * * *.

The statutes are *pari materia* with each other and with Section 6, Art. X. Enforcement of Section 3–52–4 and Section 65–2–1(B) would lead to a contradiction of Home Rule autonomy as guaranteed by Section 6, Art. X, and a construction of the express language in Section 3–52–4 of the Municipal Transit Law, which authorizes a municipality qualifying thereunder to engage in the business of transportation of passengers and property "by whatever means it made decide" and to "do all things necessary for the acquisition and conduct of the business of transportation." We apply the rule that the more specific section governs the general, because one section is clearly more specific here. The Motor Carrier Act deals with common carrier transportation by motor vehicle throughout the state generally, whereas jurisdiction of the Municipal Transit Law is limited to common carrier transportation within a municipality. The more specific Municipal Transit Law governs.

We find no error in the judgment of the district court, and therefore affirm its decision.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.