827 P.2d 1291

In the Matter of the Applications of
MISSION PETROLEUM CARRIERS,
INC. and Oil Transport Company,

In the Matter of the Application
of ASH, INC.,

GROENDYKE, INC., Ash, Inc., Steere
Tank Lines, Appellants,

v.

NEW MEXICO STATE CORPORATION
COMMISSION, Eric P. Serna, Jerome
D. Block and Louis Gallegos, Appellees,

and

Oil Transport Company,
Intervenor–Appellee.

No. 19824.

Supreme Court of New Mexico.

March 3, 1992.

Rehearing Denied March 25, 1992.

Civerolo, Hansen & Wolf, Wayne C. Wolf, Albuquerque, for appellant Groendyke.

Ray Sanchez, Albuquerque, for appellant Ash.

Jack Smith, Albuquerque, for appellant Steere Tank Lines.

Jones, Snead, Wertheim, Rodriguez & Wentworth, James G. Whitley, Santa Fe, for intervenor-appellee Oil Transport.

Avelino A. Gutierrez, Sp. Asst. Atty. Gen., Albuquerque, for appellees Corp.

## OPINION

FRANCHINI, Justice.

This matter is before us pursuant to the Extraordinary Writ of Certiorari that was entered on July 24, 1991. At issue is the State Corporation Commission's February 1, 1991 grant of a Certificate of Public Convenience and Necessity to Oil Transport Company (OTC). The grant is being challenged by Groendyke Transport, Inc. (Groendyke), Steere Tank Lines, Inc. (Steere), and Ash, Inc. (Ash). The grant to OTC was issued after the original denial of its application was vacated by this court in *Oil Transport Co. v. New Mexico State Corporation Commission*, 110 N.M. 568, 798 P.2d 169 (1990) (*OTC I*). In *OTC I*, we reversed and remanded to the Commission with instructions that:

> having determined a lack of mutual exclusivity, it enter additional findings of fact and conclusions of law, based upon the entire consolidated record, as to whether the grant of a certificate to OTC would be, "inconsistent with public convenience and necessity" and whether OTC is, "fit, willing and able to provide the transportation to be authorized by the certificate and to comply with the Motor Carrier Act and regulations of the commission." NMSA 1978, § 65–2–84(D)(1) (Repl.Pamp.1981).

*OTC I*, 110 N.M. at 574, 798 P.2d at 175.

 We therefore must determine whether the Commission complied with the mandate of this court in *OTC I*. We determine that the Commission did not comply and reverse and remand with instructions.

"Upon review of a second appeal the only issue is whether the trial court [in this case the Commission] followed the appellate mandate." *Genuine Parts Co. v. Garcia*, 92 N.M. 57, 60, 582 P.2d 1270, 1273 (1978). The Commission had only the jurisdiction necessary to comply with the mandate of this court. *Id.* As stated above, we instructed the Commission to determine whether the grant of a certificate to OTC would be inconsistent with public convenience and necessity, and whether OTC is fit, willing, and able to provide transportation. Appellants do not challenge the Commission's findings as to OTC's fitness, and thus, we will accept them as true. *City of Roswell v. Reynolds*, 86 N.M. 249, 522 P.2d 796 (1974). What appellants challenge is the Commission's finding that a grant of authority would not be inconsistent with public convenience and necessity. Based on a comparative review, it is inconceivable to appellants that the Commission could find the total opposite of what it found in two prior hearings. The Commission had twice found a grant of authority to OTC would be inconsistent with public convenience and necessity. Additionally, appellants challenge the Commission's interpretation of our mandate. The Commission's answer brief states: "Indeed, reviewing the directions of the Mandate, as well as the consolidated records before the Commission, there was but one result [that] could be reached on remand, and that was to grant a certificate to Oil Transport Company."

It appears the Commission felt compelled to reach the result that the grant to OTC was a foregone conclusion. It was not the intention of this court to force the Commission to grant OTC a certificate. What this court intended was that the Commission would make a comparative review of the OTC and Ash applications based on the consolidated record; determine whether OTC was a fit and proper person to be granted a certificate; and determine whether granting OTC a certificate would be inconsistent with public convenience and necessity. It appears the Commission did not do what we contemplated in our opinion and mandate. It also appears that the Commission rubber-stamped its counsel's recommendation that this court left no other choice than to grant a certificate to OTC.

This case has become confused by two propositions of law that became the law of the case. The first was that the district court ordered an *Ashbacker*[1] comparative review of the OTC and Ash applications, based upon the entire consolidated records. This order was never appealed. The second was that the Commission determined that the applications were not mutually exclusive. "Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B James W. Moore et al., *Moore's Fed. Practice* ¶ 404[1] (2d ed. 1991); *see Reese v. State,* 106 N.M. 505, 745 P.2d 1153 (1987) (definition of doctrine); *First Nat'l Bank of El Paso v. Cavin,* 28 N.M. 468, 214 P. 325 (1923) (all matters determined by former decision of case become law of case and are binding upon court and litigants).

■ Although comparative review is usually only necessary when there is mutual exclusivity, *see* Bernard Schwartz, *Administrative Law* § 6.2 (1984); *Great Western Packers Express, Inc. v. United States,* 263 F.Supp. 347 (D.Colo.1966), here, each application may have prejudiced the other, *Great Western,* at 351, and so a comparative review should have been provided to afford a fair review. A comparative review did not preclude the Commission from determining that more than one applicant could be awarded a certificate. It did not prejudge this issue. Whether the Commission determined that there was room for more than one applicant, it still could have found that granting OTC a certificate would be inconsistent with the public interest based on all relevant factors.

Additionally, the finding that the applications were not mutually exclusive did not prevent the Commission from granting or denying OTC's application. With non-mutual exclusivity, the Commission still should have looked at the effect on existing carriers and the public convenience and necessity with respect to each of the applications.

In *OTC I,* we ordered the Commission to "make additional findings of fact as may be necessary to support its decision." *OTC I,* 110 N.M. at 573, 798 P.2d at 174. Having shown public need and fitness, the only element left in the statutory scheme was public convenience and necessity. The Commission's findings on that issue were its conclusions that insufficient evidence was presented by persons objecting to the issuance of the certificates, that the transportation policy section was considered, and that issuing the certificates to OTC would be consistent with public convenience and necessity. NMSA 1978, Section 65–2–84(F) (Repl.Pamp.1990) states:

> Before granting a certificate * * * the commission shall take into consideration the transportation policy of Section 65–2–81[,] NMSA 1978 and the effect of issuance of the certificate on existing carriers; provided, however, that the commission shall not find diversion of revenue or traffic from an existing carrier to be, in and of itself, inconsistent with the public convenience and necessity.

■ The transportation policy of NMSA1978, Section 65–2–81 (Repl.Pamp. 1990) states that the motor vehicle should be:

> [S]upervised and regulated so as to provide for the development, coordina-

---

1. *See Ashbacker Radio Corp. v. Federal Communications Comm'n,* 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). In *Ashbacker,* two applications were made to operate radio stations on the same frequency. The FCC granted the first application without a hearing and then designated the second application for hearing. The Court held that the FCC acted improperly: "For if the grant of one [application] effectively precludes the other, the statutory right to a hearing which Congress has accorded applicants before denial of their applications becomes an empty thing." *Id.* at 330, 66 S.Ct. at 150.

> A good definition of the doctrine is as follows: When the grant of a license to one applicant precludes granting a license to another applicant, a consolidated, comparative hearing on the fitness of the competing applicants must be held. The factor causing the mutual exclusivity need not be physical interference, but may be economic. 4 Jacob A. Stein et al., *Administrative Law* § 41.04 (1992).

tion and preservation of a safe, sound, adequate, economical and efficient intrastate motor carrier system that is vital to the public interest of New Mexico. To that end, it is necessary that regulation promote competitive, economical and efficient service by motor carrier, and reasonable charges therefor without undue preference or advantage; enable efficient and well-managed motor carriers to earn adequate profits, attract capital, and maintain fair wages and working conditions; and provide for competitive motor carrier services at affordable rates for all municipalities, towns, villages and rural communities of New Mexico.

■ This statute is a regulatory statute and the Commission must weigh and balance the relevant evidence. *Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n*, 101 N.M. 470, 475, 684 P.2d 1135, 1140 (1984). Under existing law, public convenience and necessity means the convenience and necessity of the general public for the service in question. *Ferguson–Steere Motor Co. v. State Corp. Comm'n*, 63 N.M. 137, 146, 314 P.2d 894, 900 (1957); *Transcontinental Bus Sys. v. State Corp. Comm'n*, 61 N.M. 369, 372, 300 P.2d 948, 950 (1956). It considers adequacy of existing service as well as whether duplication of facilities would occur. *See Ferguson–Steere; Transcontinental; Whitfield Transp., Inc. v. New Mexico State Corp. Comm'n*, 85 N.M. 632, 515 P.2d 557 (1973). The diversion of revenue and traffic to existing carriers are also elements to be considered, although standing alone they will not establish inconsistency with the public convenience and necessity. § 65–2–84(F).

The Commission did not make findings comparing the merits of carriers and addressing evidence of the effect on existing carriers and its relationship to public convenience and necessity. No findings were made showing any rational connection between factors such as competition, duplication of facilities, deteriorating market causing decreased service potential, and the .

welfare of existing New Mexico citizens as those factors would affect public convenience and necessity.

We therefore, reverse and remand this case to the Commission to determine whether the grant of a certificate to OTC is inconsistent with public convenience and necessity. There is not only one result that can be reached on remand but whatever result is reached must be supported.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.